UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,

Plaintiff,

v.

JOSEPH BRANDON GOURLEY,

Defendant.

NO.  CR-06-6011-RHW

**ORDER DENYING
DEFENDANT'S MOTION TO
SUPPRESS, *INTER ALIA***

Before the Court are Defendant's Motion to Suppress Evidence and Request for Evidentiary Hearing (Ct. Rec. 23), Motion to Sever Counts (Ct. Rec. 26), and Motion to Demand Discovery (Ct. Rec. 29).  A pretrial conference and suppression hearing was held on August 9, 2006.  Defendant was present and represented by Robert Fischer; Assistant United States Attorney James Hagarty appeared on behalf of the Government.

At the hearing, the Government announced its intention to present a new theory regarding the legality of the search in question.  The Government also announced that it was abandoning the theory relied upon in its memorandum in opposition to Defendant's motion to suppress.  After questioning Mr. Hagarty as to why the Government was changing its response to Defendant's motion to suppress at such a late stage, the Court concluded it would take the motions under advisement to avoid prejudicing Defendant and to determine how best to proceed.

**I.    Defendant's Motion to Suppress**

In his motion to suppress, Defendant asks the Court to suppress evidence of

**ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS, *inter alia* ~ 1**

a gun that was found during the execution of a search warrant which he alleges was based on tainted evidence acquired during an illegal search of his girlfriend's vehicle.  Because both counts of the indictment are based on Defendant's possession of a firearm and, by extension, evidence regarding the firearm, Defendant's motion to suppress is dispositive.

**A.    Background Facts**

The following facts were taken from various police reports generated in connection with Defendant's arrest on January 18, 2006.

On January 8, 2006, Defendant agreed to meet with a confidential informant ("CI") and to sell her $100 worth of methamphetamine.  The CI was working for the Tri-Cities Task Force.  After several phone calls between Defendant and the CI, they agreed to meet at the Sally's Beauty Supply in Kennewick, Washington. Previously, the CI had warned the officers that Defendant was an escapee from the Department of Corrections, that probably there was an outstanding warrant (which officers confirmed), that he would probably be carrying a firearm, and that he would be driving a green Ford Explorer.

On January 18, 2006, the CI and an undercover agent drove to the store and parked next to a green Ford Explorer.  Defendant was sitting in the driver's seat. The CI walked to the vehicle and purchased a baggie of what was later confirmed to be methamphetamine for $100.  After the CI returned from the vehicle, Defendant's girlfriend, Shelly Garza, returned from the store and entered the Explorer.  At this point, the officers became concerned that Defendant would leave the area and a high-speed chase would ensue, so they arrested Defendant on the outstanding warrant.  He was searched and the buy money was found on Defendant's person.  Defendant was taken from the scene approximately ten minutes later.

Ms. Garza was placed in the back of a patrol car and was questioned for approximately 30 to 45 minutes.  During this time, Ms. Garza stated that she was

**ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS,** *inter alia* ~ 2

the registered owner of the vehicle.  It appears that at some point, she was told that her vehicle would be impounded or seized, but it does not appear that she was told that the vehicle would be searched.  Ms. Garza protested when the police seized her vehicle, but gave the police a phone number and address where she could be reached when it was clear the vehicle was going to be impounded or seized.

At some point, Detective Runge of the Tri-Cities Task Force "secured the vehicle."  At that time, Detective Runge noticed a small amount of white powder that looked similar to methamphetamine.  Detective Runge also found some money inside the vehicle.  The vehicle was transported to the Metro Secured Vehicle Storage Compound, and the detectives submitted a warrant application to the Franklin County Superior Court.  The application relied, in part, on the observation of the white powder.  The court issued the warrant on January 20, 2006.

On January 27, 2006, Detectives Runge and McCalmant executed the search warrant on the green Explorer.  During the search, the detectives recovered, among other items, the following pertinent items: (1) one small baggie containing white powder (testing positive for methamphetamine) on the floor of the vehicle; (2) one small baggie containing white powder (testing positive for methamphetamine) inside a black duffle bag inside the passenger compartment of the vehicle; and (3) a loaded 9mm handgun found under the driver's seat that was later confirmed to be stolen.

**B.  Pending Motions**

During the discovery process, Defendant was provided with copies of the police reports, the affidavit in support of the warrant, and other discovery provided by the Government.  In response, Defendant sought additional information regarding the procedures used to impound the car and filed a motion to demand discovery, seeking to examine the Metro Secured Vehicle Storage Compound where the Ford Explorer was taken and asking the Government to provide manuals

**ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS,** *inter alia* ~ 3

and policy statements regarding impoundment.  In its response, the Government
gave notice that it did not intend to provide the manuals because they were not
relevant to the issues in this case, but would provide "documentation concerning
any written impound procedure."[1]

    In his motion to suppress, Defendant set forth four theories as bases for the
suppression of the evidence obtained in the search: (1) the warrantless search of the
vehicle during the controlled buy was not justified by any exception to the Fourth
Amendment's warrant requirement; (2) the warrant obtained to further search the
vehicle was invalid because it was based on tainted evidence; (3) the search
violated Federal Rule of Criminal Procedure 41(f)(3) by not serving Defendant's
girlfriend or Defendant a copy of the warrant; and (4) the affidavit in support of the
warrant contained misstatements or omitted facts.  Defendant asserts under these
grounds that all fruits of the search should be suppressed.

    In its response, the Government argued the search incident to arrest
exception to the warrant requirement justified the search of the vehicle.  Notably,

---

[1]Specifically, the Government responded as follows:

The Government will provide documentation concerning any written
impound procedure.  However, the Government believes that this
request contemplates legal issues not commonly a part of any
impound procedure, therefore does not intent to provide any
information, other than the written impound policy.

In response to Defendant's request for copies of training manuals, the Government
responded as follows:

The Government objects to this request, as the determination of
impound, inventory and search warrant involve legal arguments, and
the manuals are not relevant to that determination.

(Ct. Rec. 31).

**ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS,** *inter alia* ~ 4

the Government did not mention the inventory search exception, and Defendant therefore did not discuss it beyond a footnote in his reply memorandum. The Government's failure to rely on the inventory search exception seems to have come as a surprise to Defendant, evidenced by Defendant's motion to demand discovery of the police department's impound procedures and policy manual.

At the hearing, Defendant presented his argument on all three of his motions, including his motion to suppress. After Defendant finished his presentation, the Government first responded to Defendant's motions to demand and to sever. The Government stated clearly it did not believe the impound procedures were relevant because there was not an impound in this case. At that time, the Court asked the Assistant United States Attorney if he agreed, therefore, that the issue is whether it was a search incident to arrest, as he stated in his briefing on the issue. The Government stated it did not agree, and at this point put forth a different theory. Counsel for the Government explained that he did not speak to the officers who conducted the search and seizure of the vehicle until the day before the hearing. After interviewing the officers, the Government apparently determined this was not a search incident to arrest and in fact was not a search at all; instead, this was an administrative seizure of a vehicle used in a drug trafficking offense.

This theory of defense to Defendant's motion to suppress does not appear in any of the Government's briefing. Although it had apparently learned of and developed this theory after interviewing the officers involved in the search the day before, the Government did not provide any notice to Defendant or the Court of its intention to introduce this theory and abandon the search-incident-to-arrest exception until after Defendant had presented his argument at the hearing. Additionally, the Government continued to object to Defendant's discovery request at the hearing, which clearly asks for manuals and/or policy statements relating to impounding "or otherwise seizing or securing a vehicle by force or by consent or

**ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS,** *inter alia* ~ 5

1   under any police procedure or state law or federal law[.]" (Ct. Rec. 29).

2         Additionally, at the close of the hearing, counsel for the Government made

3   an additional argument:

4         I would like to say, your Honor, the Government's position is

5         that regardless if the court opens up the record or does not open up the

6         record, the defendant hasn't established there was a search, and I think

7         that in this case, he alleges the search, but that has not been

8         established, because there are not facts in the record in those reports

9         that the car was searched.

10  (Ct. Rec. 39).

11        Like the first theory presented at the hearing, this theory of no search taking

12  place was never briefed by the Government.  Moreover, it is disingenuous that the

13  Government is arguing that no search took place.  An observation of the white

14  powder was made—the observation clearly being a search—and a search was

15  conducted pursuant to the search warrant.  The fact that two searches were

16  conducted is so obvious that it is incredulous to argue otherwise.

17        **C.**    **Discretion to Reopen Argument**

18        Rule 12(b)(3)(C) of the Federal Rules of Criminal Procedure requires

19  motions to suppress evidence be raised before trial.  Failure to raise the motion to

20  suppress before trial results in a waiver of the defense.  Fed. R. Crim. P. 12(e);

21  *United States v. Murillo*, 288 F.3d 1126, 1135 (9th Cir. 2002).  These rules have

22  been regularly construed broadly, generally to the detriment of defendants, to

23  affect a waiver even when a party fails to raise a particular ground in support of a

24  motion to suppress.  *See, e.g.*, *Murillo*, 288 F.3d at 1135 (holding that ground for

25  suppression not included in pre-trial motion to suppress was waived); *United States*

26  *v. Wright*, 215 F.3d 1020, 1026 (9th Cir. 2000) ("[F]ailure to bring a timely

27  suppression motion constitutes a waiver of the issue."); *United States v. Restrepo-*

28  *Rua*, 815 F.2d 1327, 1329 (9th Cir. 1987) (*per curiam*) ( "Just as a failure to file a

**ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS,** *inter alia* ~ 6

1    timely motion to suppress evidence constitutes a waiver, so too does a failure to

2    raise a particular ground in support of a motion to suppress.").  The Court may

3    grant relief from a waiver, but only for good cause shown.  Fed. R. Crim. P. 12(e);

4    *Murillo*, 288 F.3d at 1135.

5        Although the waiver provision has regularly been applied to criminal

6    defendants, the actual language of Rule 12(e) does not limit its application: "*A*

7    *party* waives any Rule 12(b)(3) defense, objection, or request not raised . . . ."  Fed.

8    R. Crim. P. 12(e) (emphasis added).  Just as a ground for suppression is waived

9    when not timely raised, the Court finds a ground raised in opposition to a motion to

10   suppress may be waived as well.  Accordingly, the Court has no duty to consider

11   the Government's newly-minted theory of administrative seizure.  *See United*

12   *States v. Bush*, 794 F. Supp. 40, 44 (D.P.R. 1992) (stating the district court "need

13   not consider" an issue in support of a motion to suppress because it was raised for

14   the first time at the suppression hearing and not raised in briefing).

15       The Government has not shown good cause for the Court to consider its new

16   argument.  Instead, the Government has shown a distinct and serious lack of

17   preparation and responsiveness to issues clearly raised.  Notably, the Government,

18   in filing its brief, made factual assertions and arguments apparently before

19   conducting an investigation into the facts with the witnesses involved.  The

20   Government's theory that no search ever took place was made without an adequate

21   basis in law or fact.  Such representations to the Court made without investigation

22   violate the standard of practice expected from the United States Attorney's office.

23       The United States has the largest and most powerful legal office in the

24   nation, if not the world.  It has a vital responsibility to criminal defendants, the

25   courts, and to the public to exercise its powers responsibly and justly.

26   Consequently, this Court and the laws of this country hold the Government to a

27   high standard when it brings its authority to bear on individuals such as the

28   Defendant.  The Court therefore will exercise its discretion not to permit the

**ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS,** *inter alia* ~ 7

Government's introduction of new grounds in response to Defendant's motion to suppress.

At the hearing, the Government abandoned its search-incident-to-arrest argument in opposition to Defendant's motion to suppress.  Consequently, the Court finds no warrant exception applies to the Government's initial search of the vehicle and the evidence observed during this search was illegally obtained.

**D.    Search Warrant**

The Fourth Amendment protects the rights of people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures. U.S. Const. Amend. IV; *United States v. Hammett*, 236 F.3d 1054, 1059 (9th Cir. 2001).  Evidence obtained as a direct result of a Fourth Amendment violation may not be used to establish probable cause for a subsequent search.  *United States v. Barajas-Avalos*, 377 F.3d 1040, 1054 (9th Cir. 2004).  When an affidavit contains evidence that is illegally obtained, "[a] reviewing court should excise the tainted evidence and determine whether the remaining, untainted evidence would provide a neutral magistrate with probable cause to issue a warrant."  *Id.* (citations omitted).

Here, the affidavit was written on January 20, 2006, two days after the impound or seizure of Ms. Garza's Explorer.  The affidavit describes the circumstances of the controlled buy between Defendant and the CI, including Defendant's location in the driver's seat of the Explorer at the time of the controlled buy.  It also includes the evidence observed during the Government's seizure of the vehicle, *i.e.*, the white powder and currency.  Lastly, the affidavit states the vehicle was transported to the Metro Secured Vehicle Storage Compound pending application for the search warrant.

As discussed above, the Court finds that the evidence regarding the white powder and currency should be excised from the warrant.  What remains is

**ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS,** *inter alia* ~ 8

evidence regarding the controlled buy between Defendant and the CI.[2]  The Court finds that this evidence is enough to establish probable cause to issue the warrant.

Defendant argues that the officers, in executing the warrant, violated Fed. R. Crim. P. 41(f)(3) because they failed to serve Ms. Garza or Defendant with a copy of the warrant.  The Court disagrees.  The function of the warrant is to "assure the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search."  *United States v. Williamson*, 439 F.3d 1125, 1132 (9th Cir. 2006) (citations omitted).  The warrant also gives notice to the person subject to the search what the officers are entitled to seize.  *Id.*  Consequently, service of the warrant is not necessary to meets its intended function when the individual is not present.  Indeed, Fed. R.Crim. P. 41(f)(3)(B) allows officers to leave a copy of the warrant and receipt where the individual is not present.

Here, the record is clear that Ms. Garza was not present at the time the search warrant was executed.  Nothing in the rule requires the officers to personally locate Defendant or Ms. Garza and serve the warrant.

Defendant alleges that the search warrant contains misstatements and omitted facts that require the Court to conduct a *Franks* hearing.  Under *Franks v. Delaware*, 438 U.S. 154, 155 (1978), an evidentiary hearing is held at the defendant's request when the defendant can make a substantial preliminary showing that an officer made a knowing and intentional false statement, or made the statement with reckless disregard for the truth, and a warrant was issued upon the statement.  *Id.*  "There is a presumption of validity with respect to the affidavit supporting the search warrant."  *Id.*  Allegations of falsehood or of reckless disregard for the truth must be accompanied by an offer of proof, pointing out

---

[2]The sufficiency of the affidavit in support of the search warrant to establish probable cause was briefed by the parties.

**ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS,** *inter alia* ~ 9

specifically the portion of the warrant affidavit that is claimed to be false. *Id.*
Evidence obtained as a result of the tainted search warrant will be excluded if the
defendant can establish by a preponderance of the evidence that the warrant was
obtained through perjury, and with the affidavit's false material set aside or the
omitted information included, the remaining information is insufficient to establish
probable cause. *Id.*

Defendant charges Detective Gregory with knowingly and intentionally
omitting material information. Specifically, Defendant alleges the following
deficiencies:

(1)   The affidavit fails to describe any connection between the vehicle and
the transaction;

(2)   The affidavit fails to indicate a belief that the vehicle was used to
transport the contraband;

(3)   The affidavit only indicates that Defendant was the driver, but not that
he was the seller, nor does it state that the officers observed Defendant ever
driving the vehicle, arriving in the vehicle, or sitting in the vehicle, or that he
conducted the transaction from the vehicle;

(4)   The affidavit did not contain any allegations that Defendant was
suspected of ongoing drug activity, or claimed that Defendant had more
drugs to sell;

(5)   Defendant was never identified as the owner of the vehicle;

(6)   No allegations in the affidavit that the officers believed more drugs
could be found in the vehicle after this single transaction.

Additionally, Defendant asserts the following material facts were omitted
from the search warrant:

(1)   The fact that the owner of the vehicle was detained by the police and
was at the scene when the vehicle was secured;

(2)    The facts regarding how the vehicle was secured;

**ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS,** *inter alia* ~ 10

(3)    That Ms. Garza was not asked to consent to an inventory search;

(4)    That the CI told the police that only the $100 deal was discussed between Defendant and CI;

(5)    That the CI never indicated that the CI had actual knowledge that Defendant was transporting any illegal substances other than what was discussed between the CI and Defendant;

(6)    That what was actually sought was a gun that the CI had indicated the Defendant usually carried in his waist band, but was not found on him during the DOC arrest.

In reviewing the affidavit, the Court notes that the affidavit stated that the CI purchased meth from "Joseph Gourley," that Joseph Gourley was the driver of a 1994 Ford Explorer, and that during the transaction the CI made contact with the driver of the 1994 Ford Explorer.  There is nothing in the affidavit that would suggest that these were not one and the same event.  Accordingly, the affidavit accurately described a controlled buy, and provided enough evidence to allow the issuing judge to conclude that a controlled buy between Defendant and the CI took place in or near the 1994 Ford Explorer, which was driven by Defendant, and which was eventually seized and transported to the Metro secured vehicle storage compound.  The affidavit also included a statement that indicated that individuals who distribute illegal controlled substances commonly secret the drugs in secure locations under their dominion and control, including their vehicles, which provides further support for issuance of the search warrant.

Notwithstanding the above analysis, the Court notes that the identity of the Defendant, the identity of the seller, and the identity of the owner of the vehicle are immaterial in securing the warrant to search the vehicle.  The officers were not trying to obtain a search warrant to search Defendant's residence.  Instead, they were obtaining a warrant to search a vehicle that was undisputedly involved in a controlled buy.  The fact that the controlled buy was made with the driver of the

**ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS,** *inter alia* ~ 11

vehicle indicates that it was more likely than not that the vehicle was used to transport the drugs. The fact that Defendant was the driver of the vehicle was immaterial in obtaining the search warrant.

Moreover, Defendant has not made a threshold showing that Detective Gregory made a knowing and intentional false statement, or made the statement with reckless disregard for the truth. The facts that Defendant suggests were omitted or were falsely made are not material to the determination of whether there was probable cause to issue the search warrant, when the search warrant was based on a controlled buy involving the 1994 Ford Explorer.

**III.    Defendant's Motion to Sever**

Defendant also asks that the two counts be severed. This motion was not addressed fully at the hearing. Although the Government can stipulate to the prior felony, the stipulation would only apply to Defendant's Felon in Possession of a Firearm charge. Evidence of his prior felony would not be admissible at trial on the Use of a Firearm in Relation to a Drug Trafficking Offense charge. The potential for prejudice is great, and severing the two counts will ensure that Defendant will receive a fair trial.

Accordingly, **IT IS HEREBY ORDERED:**

1.  Defendant's Motion to Suppress Evidence and Request for Evidentiary Hearing (Ct. Rec. 23) is **DENIED**.

2.  Defendant's Motion to Sever Counts (Ct. Rec. 26) is **GRANTED.**

3.  Defendant's Motion to Demand Discovery (Ct. Rec. 29) is **DENIED, as moot**.

4.  The current trial date of August 21, 2006, is **stricken**.   A new trial date is set for **October 10, 2006**, at 9:00 a.m., in Yakima, Washington. Counsel shall meet in chambers at 8:30 a.m. on the first day of trial.

5.  Pursuant to 18 U.S.C. § 3161(h)(1)(F), the time between August 21, 2006, the current trial date, until October 10, 2006, new trial date, is **DECLARED**

**ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS,** *inter alia* ~ 12

1   **EXCLUDABLE** for purposes of computing time under the Speedy Trial Act.

2       **IT IS SO ORDERED.**  The District Court Executive is directed to enter this

3   Order and to provide copies to counsel.

4       **DATED** the 7th day of September, 2006.

5

6               *s/ Robert H. Whaley*

7               ROBERT H. WHALEY
          Chief United States District Judge

8

9

10

11  Q:\CRIMINAL\2006\Gourley\deny.suppress.wpd

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS,** *inter alia* ~ 13